Okay, you may proceed, Mr. Kirshman. Thank you very much. May it please the court. Counsel. My name is Martin Sirkill. I represent Chance Clyce as appellant in this case. As a brief procedural matter, we want to let the court know that we're dismissing all claims against any of the state defendants in their individual or official capacities. So if we're fortunate enough to have the case remanded back to the district court, the only live defendants would be any of the Hunt County defendants, whether they be in their individual or official capacities. What do you mean you're dismissing? I mean, you're just telling us you're going to do that? Yes, or even at this moment. We have no claims against them. So you're saying that you are dismissing certain claims, and that's binding upon your client? That's correct. And tell us again who you're dismissing? There's a litany of names here, so I'll kind of do it in a generic sense. But it would be anybody related to the Juvenile Justice Department in any individual or official capacity. Well, after argument, why don't you file with our clerk's office for an order where you dismiss your appeal against a specific person so that you know exactly who's left in this case? Thank you. And so you're saying who's left in the case? Everybody else, huh? Who's everybody else? Okay. We have what we've termed originally the unknown staff at, no, that's wrong, the investigator, Mr. Farley, for the Hunt County Juvenile Detention Center individually, officially. Mr. Kenneth Wright, individually and officially, also at the Hunt County Juvenile Detention Center. Shania Williams, individually and officially in her capacity working for the Hunt County Juvenile Detention Center, etc. And I will follow your direction. Give me the category that you're keeping in.  The category? Young men, yeah, yeah. I'm not sure I understand what you mean by category. Well, you're leaving in a certain group of persons. What group is that? Persons? Okay, fair enough. Maybe I'll talk a moment about the facts, and then I'll get directly back to your answer. No, answer my question. Who is left in this case? Just give me a category, like. Young men was injured at the Hunt County Detention Center, everybody who's part of the Hunt County Detention Center. Okay. So you're dismissing Texas juvenile justice? We are, Your Honor. So Mr. Lindsey doesn't need to be here? Did he know before today that you were going to dismiss him? No, and I didn't know that either until this morning. How could you not know? I hadn't thought about it until this morning, Your Honor. So here we are with pleadings that are irrelevant. It's not very helpful. I can apologize for that, but I think it's wiser for me to dismiss them now than continue that for no reason. Okay. Came here to talk about the facts, came here to talk about the law, but I really think the most interesting implication for me is the effect of the decision by the magistrate and the decision that was ratified by the district judge on the issue of lawyering. Let's think about this for a minute. The young man was injured at the detention center. His parents filed a lawsuit on February 29, 2009. If we let the district court's decision stand, what that means is they should have filed another lawsuit, if at all, by February 29, 2011, one that was kind of an impossibility because the young man was still a minor. But let's think about it in broader terms, not just in this case, but in any case. As a plaintiff's attorney, all of a sudden I get, let's say this case is ratified, all of a sudden I represent minors and I'm watching the clock. I'm watching the clock and I'm saying, I've got two years to make another lawsuit happen. Do we really want that? I don't think so. I really don't think that's the best way for us to use judicial economy. I don't really think that's the best way to even get to finality, which is one of the, I think, underlying principles in the magistrate's decision and the district court's decision. And we all appreciate the need for finality, but what this does is actually do the exact opposite, Your Honor. It opens up the door for further litigation. Personally, I think there's a lot of other ways that a case like this could be addressed if it's sent back to the district court, given the opportunity to amend the pleadings, which, by the way, I think the way we wrote it, and I think the law supports this, that was abuse of discretion, not to let the original attorneys who had the case, it wasn't me, amend the pleadings to address it. They filed a request to amend the pleadings. Actually, they did, Your Honor. They filed a request or they mentioned it in passing? The way I understand the written documents. So I didn't go back and read the source documents that was done by the underlying attorney at the district court. But my understanding of the reading is that he did. That he did specifically ask. You know, let's take, you know, I'll get to that on my last few minutes. I'll come back, and I think I have the document that speaks to that, Your Honor, okay? And I will address that rather than fumble up here. But I'll address that. I'll fumble later. Or hopefully recover the fumble, given the opportunity. I mean, if it's in there, it's in there. If it's not, it's not. But it's my understanding that he definitely did ask to amend the complaint, okay? So we have an interesting rule that was adopted by the magistrate. I've scoured Texas Civil Practice and Remedies Code, Chapter 16, that deals with limitations. There's nothing in there close to that. I scoured the case law that was cited by the magistrate and reiterated by the district judge. And those cases, both Ramirez and Intercare, say nothing about this tolling issue. What those cases speak about is finality of decisions. But we're not here attacking the finality of a previous decision. It's a judge-made rule. And I think that judge-made rule has other problems I'm going to talk about here in a second as well. The judge wrote that the minor's claims were not tolled until the minor reaches majority because the incapacity of the minority was remedied by the next friend proceeding. And once again, the magistrate and district judge relied upon the Ramirez and Intercare, which don't say that. In fact, there's no case that says that. No case that says that. It's brand new. The legal question is, do the parents, actually the chance now that he's age of majority, have the right to file new claims that his parents did not or neglected to file? Well, I did something kind of old-fashioned. I looked in a book. I looked in the old blacks or the Vernons that we have, and as you know, they have digests in them where they list all the cases. And I found a case. In fact, I found a number of cases. I'm going to read this one. It is from 1901. Galveston H. and S. A. R. v. Washington. 63 Southwest 538. Also 1901. Text app Lexus 509. Court of Appeals Houston, January 21st, 1901. And it says, The heir or ward under disability is not deprived of his action by any neglect on the part of any administrator or guardian to bring a suit in time. The court found that the filing of the suit by the child's next friend, happened to be his father, did not create or did not stop the child from filing his own suit when he became an adult. There are other cases also early on in our history that dealt with a similar issue. And another one is Hampton v. Hampton. 29 Southwest 423, 1895. Text app Lexus 388. Court of Appeals 1895. And it says, A judgment may be set aside when made against a person when he was a minor. I want to use the key word here, judgment, because there already was a judgment in place. If their underlying transaction had some fraud, or it had some other equitable issues that needed to be addressed. One of the things that happened in this case, as we have pleaded when we appealed it, was that there were some concerns about fraud. There were some concerns about misrepresentation by staff in this case. And certainly if a minor can reopen a previous judgment on allegations of fraud without running afoul of the statute of limitations, then certainly Mr. Kleist can open a new cause also without running afoul of the statute of limitations. And once again, it's an important fact-based issue when we're talking about limitations anyway. Which is something that is best left for, once again, the opportunity to amend the complaint and then go arguably to motions for summary judgment. The other issue that's interesting about thinking about the implications of this rule is so if parents filed the suit in February 29, 2009, and then arguably if we uphold that rule, they should have filed something else by February 29, 2011, well, what's the accrual period? I mean, we're just creating another unworkable rule. Does it go back to the moment when the parents filed it? Is it those two years? Does it go back all the way to when the kid was a minor, including every single thing that happened to the kid anywhere or at the detention center that was missed the first time? So that's another problem with what I call the lawyering part or the implication of this decision. Another important public policy consideration, and this is a Fifth Circuit case, Doran v. Compton, 645 F. 2nd, 440, Fifth Circuit, 1981. It notes that if we're going to talk about a limitations period, it's presumed to be prospective. And only if the legislature has a specific legislative intent in a limitations law can it be retroactive. Well, here, there's certainly no legislative intent. I mean, we could scour any of the aspects of the civil practice and remedy code dealing with a tolling of limitations, and there's a list of them going through the whole Chapter 16, none of them have any legislative intent that address the issue of this rule. So even if the court would apply this rule, and we don't think it should, but even if you do, we don't think it should apply to Chance Clyce for the various reasons. In fact, arguably, that also violates the Texas Constitution, which states that no retroactive law may be made. Once again, we have asked that the court remand this case back, give us the opportunity to amend the pleading, to take into consideration the various potential tolling issues. For instance, the case was filed once again in February. By the time the Fifth Circuit addressed the first case that came through here, the young man was over 18. Is the statute of limitations told during that period? Is there an equitable tolling issue that we need to address? What's the accrual date? I think, once again, this particular rule creates more problems than it really benefits us. I understand and respect the need for finality and appreciate that. I may not like it, but I understand it. But I think this rule actually creates problems and actually opens up the door for plaintiff's lawyers or other litigants to file multiple pleadings within a significant period of time. I think the current law as it stands regarding limitations, the current law regarding, let's say, res judicata, regarding collateral estoppel, regarding any other equitable tolling issues, is best addressed back at the district court and not here. You're touching on a concern I have because we're here on 1983. We're here on a federal law claim, although we do, under 1983, we look to state law on certain things such as statute of limitations, et cetera. But I have a real concern about the lack of finality in a federal court decision that is appealed to our court and affirmed, and yet here we are again. And that's my overarching concern. Well, two points. One, there's significant case law that I've cited, and I've mentioned today and some of it's on our brief, that speaks to the ability for minors to reopen cases where previous judgments may be infirm. So notwithstanding the concept of finality, finality doesn't always mean finality if something infirm happened in the transaction of the case. That being said, we have other claims that are just not 1983 claims. We have other claims based upon disability. We have other claims that's based upon the Eighth Amendment. The original case was based upon medical failure to provide medical care when the young man was in the facility. So that's a totally different claim than an Eighth Amendment claim, and it's certainly a different claim than a claim based upon disability, whether 504 or the ADA. Any federal claim, then, the need for finality, even though we're saying we've got to look to Texas law on the limitations period. But you've answered my question. Once again, I understand that and appreciate that, and I do. But I think this rule will create more problems than it will benefit us by. You say this rule? Yeah, the rule that the magistrate made that said that if a parent or a next friend files a case for a child, basically what it says is that if they don't file something else within two years, they can't do it. So I think this, for me, comes back to the issue. I have a case. I represent a kid. There's something going on in the case I don't like, or there's some new things that come along. All of a sudden, I'm going to file something again within two years. I'm watching the clock. That's one of the public policy issues that would come out of a decision like that, and I think that's more dangerous than letting this case go back and litigate the issues, maybe go through res judicata, maybe go through the equitable estoppel issues, maybe go through what I think would be an equitable tolling issue. Because here the case did not even go finalized, Your Honor. You didn't raise equitable tolling on appeal, did you? I did not, but we haven't gotten that far yet. And also you keep talking about the magistrate judge. The magistrate judge's recommendation, that's all it is. That's correct, Your Honor. It was adopted by the district judge who wrote additional reasons why this action is barred. You're correct, Your Honor. That's true. If I have any other questions, I'll look for that, Your Honor, also while I have a minute. Thank you very much. Who's left now based on this announcement that certain parties are out? Which lawyers are left of the two that are supposed to argue here today? I guess that's just me, Your Honor. I'm Eric McGee, and I represent the Hunt County defendants. Is that agreeable to you, counsel? That the other lawyer does not need to make an argument because you've dismissed all of his clients? All right. May it please the court. My name is Eric McGee, and I represent the Hunt County defendants. In this case, that would be Frederick Farley, who's not an investigator as referenced here today. He was the assistant director at the time of the Hunt County Juvenile Detention Center. Kenneth Wright, who was a juvenile detention officer, and Shanika Williams, who was also a detention officer. So only three appellees are left. That's my understanding from what he told us. All right. Mr. Lindsey is not going to argue. Is that right? That's my understanding. He's Mr. Lindsey from arguing. I guess you want his ten minutes, huh? Yes, Your Honors, if there's questions and something. But I guess I'm somewhat confused today by this announcement because part of his claims dealt with a class action lawsuit that included a very lengthy fact pattern scenario about the investigations that were conducted at the Hunt County Juvenile Detention Center and that process that it went through. And he lists 37 cases of alleged sexual assaults or 37 prior complaints of abuse reports that were submitted to the TJJD as no evidence and does not meet the definition of what complaints actually are. And he goes through a very lengthy detail of eight sexual abuse cases, five sexual abuse cases with no contact, 21 physical abuse cases. By releasing or dismissing them out of the claim, then the class action matter is gone. And I believe, Judge Barksdale, you asked if that was binding on his client. Well, that's the very judicial economy and efficiency that we're here for today. And that is when you bring a lawsuit as next to friend, as allowed by Federal Rule of Civil Procedure 17C2, you're bringing those claims on behalf of the person who doesn't have the capacity to sue. In this case, that was Chance Kleiss at the time. He was the minor child of Donna and Mark Kleiss. All those claims were federal law claims. So once we take out the class action issues of the investigations, then we get back to the very operative facts that we were here for in 2009. And I don't think that it creates more lawsuits as Mr. Circle just argued. It creates less lawsuits. That's the purpose of judicial economy and efficiency, and that's to have all the claims brought forward. Back in 2009, the Kleiss family and Chance Kleiss as next to friend had four lawyers. They were represented by four separate law firms when this lawsuit initially was brought forward. We went through extensive discovery throughout that process to evaluate every single federal claim that could be brought, and they even included Texas tort law claims at that time. That was brought against the Hunt County Juvenile Detention Board, Alan Brown, who was the chief who Fred Farley reported to, Tina Joby, who was a correction officer just like the other two, and Anthony Searcy, who was also a detention officer. And at that time, Ms. Williams was actually named as a defendant in the lawsuit along with Ms. Davis, and they also put placeholders in as John Does. We had a lot of discovery in this case and depositions, and we went through the motion for summary judgment phase, first for Mr. Brown, Ms. Joby, and Mr. Searcy, and they were granted unqualified immunity. Then we went through additional discovery and depositions and filed a summary judgment motion on behalf of Hunt County and the Hunt County Juvenile Detention Board. That was also granted in our favor, and then the Kleiss family, including his next of friend for chance, filed an appeal. We came here for oral argument. The Chance Kleiss was here in the courtroom that day along with his mother and his sister, and the Fifth Circuit, the court issued its opinion affirming the trial court's granting of our motion for summary judgment. The Kleiss family, or Chance again, went ahead and filed a writ of certiorari to the U.S. Supreme Court. That was denied, and then now we're back in an attempt to revive claims that we've already had a judgment on. It's been— Well, you're arguing more preclusion than you are limitations. Well— I know it gets to the same point, but— We raised race judicata in our motion to dismiss as well as the bar— I understand, but the ruling here is simply on limitations. That's what the district judge ruled on. The district judge didn't handle the other items. I think you still have to get to the same point to determine whether there was a limitation that barred this case from being set. That barring of the case is the previous case. He was fully adjudicated in that process. It's the exact same operative facts. Other than the fact he was a minor. Other than the fact that he was— I think you really need to stick with this limitations question. I understand your concerns. They're very justifiable. Well, under the limitations issue, Judge, you look at Texas law for those, and the Civil Practice and Remedies Code states that you have two years after you reach the rule of majority, as well as Texas rule of civil procedure says that a lawsuit can be brought as next to friend, just like the federal rule of civil procedure 17C. And when you bring those, then you look at the relevant Texas case law that goes into effect as what's binding, what process is binding. And the court pointed to Ramirez as binding where there was a matter where the juvenile or a minor was represented by his father as next to friend in that matter. Party, they wanted to intervene. It was against Michigan, and there was another defendant that was trying to be added. During the deposition testimony, there was testimony from the mother and the father about that individual and that there really wasn't any negligent acts against that individual. And the court went back and determined that that person should not have been joined into the lawsuit and that the testimony of the father and the mother as next to friend was binding on that person. I mean, in this case, that would create this absurd argument that now he gets to revive something two years past him filing a federal lawsuit or his family as next to friend on his behalf, fully evaluating all the federal claims here and prosecuting those claims. There's no new operative facts. There's no new fact pattern or anything else. We're still talking about the exact same timeframe of February 2008 through March of 2008 when Chance Kleist was in our detention center. The same fact pattern that he's brought forward today about little blue pills and operating toilets, all of these things are the exact same claims that were brought prior. So if he's binding his client today to dismiss claims against the Juvenile Justice Department, the Texas Juvenile Justice Department and all the employees there, why weren't his lawyers back in 2009 when they were prosecuting his federal law claims binding him as next to friend as his mother was when they determined what specific types of claims would go forward? Give us your best Texas law from the Texas code as to how the limitations period was untold. In other words, how he only had two years once this action was filed to file a second action. Because I understand that there's just none. There's nothing in the code that would support the ruling by the district judge. I could not find a specific case that said that. We're talking about the code itself. In 1601, there's no case that says that it's bound forever either. Otherwise, you would come – I mean, it's just a policy decision, a logical situation. The court system would be flooded now if that every time somebody brought a case on behalf of someone that didn't have the capacity to sue, either due to illness or because they were a minor or something else, once that was remedied and that person was able to sue, then it would seem like every time someone would be sued. Because the same fact would apply to us. The classes and chance are unhappy with the decision of the district court dismissing the 2009 lawsuit and the Fifth Circuit affirming that and the Supreme Court not moving forward with that. I've run out of time if I can finish my thought process. Yes, you can. You can use your counsel's time. Thank you, Judge Dennis. If they had been successful in their lawsuit or had we reached a settlement with them, we wouldn't be able to then undo a settlement or a judgment had we appealed it up to the Fifth Circuit and said, oh, he hasn't reached majority yet. This doesn't apply to him because it only applies once he is two years past statute of limitations. I mean, that would create just this flood of litigation over and over throughout the process that in every case, whenever there is a next-of-friend suit, that then those opinions are not binding. Those opinions are just left until whatever the process is that would remedy it. I mean, the whole point of there being a point where you reach majority and then still having that ability to sue, there's a long list of Texas cases out there that actually discuss that, that actually discuss examples of where maybe a next-of-friend brought a lawsuit and failed to do adequate discovery or the case was dismissed for want of prosecution. And they said that's not binding on the minor or whether they just named someone in the lawsuit and the child or the person that is next-of-friend does not prosecute those claims. That's not binding on them. In this particular case, we have an issue where he participated in the entire lawsuit. His family was next-of-friend. All the various elements and causes of actions and facts in the case were evaluated and determined what cases should be brought forward. There's no situation of fraud here. There's not been an argument that Donna Clice's mother or Mark Clice's father lack the authority to speak for Chance Clice. They've not raised any issues that the interest of Chance Clice in this case differed from those of his parents. I mean, it's very clear that when you look at who the real party of interest here is, it's Chance Clice. He's the one that allegedly got MRSA at the facility. He's the one that was in the detention facility and has had subsequent surgeries from that. They've not addressed any issues that there's no conflict of interest between Mr. Clice and his parents. And they've not raised any arguments that the representation by counsel, now I believe this is six or seven various attorneys that have been in this case, was inadequate. Nor have they even raised any issues that during the process of the first lawsuit that it wasn't aggressively prosecuted. I believe you asked a question about if the record said anything about them asking to file or amend their pleading. I went back and looked last night, kind of a very similar question to that. I couldn't find a motion where Mr. Nixon, who was the previous counsel to Mr. Circle, filed an actual motion for leave to amend the pleadings or anything like that. I think it was referenced in passing in a response to our motion to dismiss, but there wasn't an actual request of the court, a separate motion seeking leave of court. I mean, if you even look back at the docket sheet, which they included in their appendix, as I think it's number one of their appendix, and it's also in the record on appeal, the first 12 pages. Ms. Clice, who actually filed the, or Chance, who actually filed this pro se in Ms. Clice, amended this lawsuit two times before an attorney was even involved. So clearly that's a process that they were aware of, and they made corrections to that process throughout this case. Three cases I've heard today I don't think were mentioned in any of the briefing in this case. That was a Galveston County case back in 1901 that talked about disability. That wasn't mentioned here. And Hartman, I think, versus Hartman, which was an 1895 case that talked about equitable issues and fraud. He attempted to tie the fraud to misrepresentations in reporting from the first case in 2009. Those issues were fully addressed throughout that process as well. I mean, to say that this is some new cause of action would mean that we have to come out of some new operative facts or something like that. And I know it all kind of ties in together with that race judicata issue, but you have to determine what statute of limitations barred you from bringing an additional suit. And I believe you just go through the analogy of the statute. You look first at the interest of the court, and that is to protect a minor child. That's what Texas Civil Practice and Remedies Code 16.001 does by allowing that two-year period to be extended after the age of majority. Then you actually go to Federal Rule of Civil Procedure 17c2 that gives the authority for someone to sue as next of friend. You also can look at Texas Rule of Civil Procedure 44 that discusses the very same thing as Federal Rule of Civil Procedure 17, which says, such next of friend shall have all the rights concerning such suits and shall give the security of cost and affidavits in lieu thereof when required. Such next of friend or his attorney of record may, with the approval of the court, compromise suits and agree to judgments, and such judgments, agreements, and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such a suit. That's the same analogy we're working with here. A lawsuit was brought as next of friend. That case was aggressively litigated to its fullest extent on the very same issues they're now trying to revive, and they're just unhappy with the previous decision in trying to bring back the exact same lawsuit. You're talking, again, you're talking preclusion, and we're here on limitations, and I understand you've told us that there's nothing in Texas law that addresses this point exactly. It's just a question of policy, and that may well be true, but what you're talking about now is, in effect, race judicata. I think the two cases you asked for some cases, there's not a case directly on point, but I think when you do look at the matter of DAS, which was referenced not only by the magistrate's report and recommendation and adopted by the judge, the matter of DAS, which was 951 Southwest 2nd 528, it's a 1997 case. It dealt with a juvenile delinquency issue, that civil issue that's quasi-criminal, and it goes through this very same analogy of what the duties and responsibilities are for a lawyer in that case when they made a determination to dismiss an appeal. Then there's the Ramirez case that I mentioned earlier versus Michelin, and that was 2007, Westlaw 2126635. It's specifically at page 4. It was a Southern District of Texas case, July 19, 2007, which basically said that those litigation decisions made by the next of friend bound the minor, and that's just the same analogy that I think you would follow here by looking at the various things. Based on that, we believe that Judge Fish, the district court judge, properly granted our motion to dismiss, and this case has been barred by statute of limitations from the 2009 litigation. Otherwise, there would be an absurd decision that then there would be a flood of litigation for anyone who wants to now come forward as they were unhappy with their previous lawsuits when they were brought and adjudicated and prosecuted to their fullest extent by their next of friends. We would ask the court affirm the district court's dismissal. Thank you, sir. The record reflects that the previous attorney did, in the response, request that he be permitted to in the state's favor at that time. It's on the reporter's record, page 48. That's not a pleading, right? No, it's not, but I will tell you from a practice perspective, I have never done that. I mean, I've had, I don't know, dozens and dozens and dozens of cases before the federal district courts, and if there's a problem with our complaint or amended complaint, we always put it in, both at the beginning and at the end, saying if the court wants to dismiss our case, we'd appreciate the opportunity to replead. I have never, ever filed a separate motion to do that, and I'm not sure there's a requirement under the rules to do that. I presume if you wanted to amend something, you filed the amendment. That didn't happen here. No, it didn't. I think the inference would have to be that the district court thought it was futile. That's the only thing I can think of.  But the question you asked me, was it asked for, and the answer is yes. No, the question I asked you was, was anything filed, meaning a court paper requesting leave to amend? No, it was not. Well, if you're asking me if there was a specific pleading related to that, the answer is no, but if you're asking me what is asked for in a pleading, the answer is yes, absolutely. We understand that. We've understood that all along. I appreciate that, Your Honor. Thank you. I do. Case law is extensive, going back many, many years, that if there's a judgment that binds a minor, and there's something about that judgment that's untold, it can be reviewed and arguably set aside. Once again, the issue before the court is one of limitations, and as I said at the beginning, and I kind of underscore again now, I think that, I use the word rule, Your Honor, so forgive me, but standard or law as it's now being contemplated is actually worse than letting things run the way they should be. We go back to court. We amend the complaint. We get rid of all the old defendants that don't need to be in the case. We simplify the issues. We make sure that none of the claims that were previously adjudicated are not brought up again, and then counsel has the opportunity to address all the other pleading issues and defenses, affirmative defenses, that that particular defendant may have, but I just think, once again, this particular issue about the statute of limitation being in effect as soon as a parent files a case for a child is not just wrong, has no foundation in the law, has no foundation in the case law, but I think the practical implications of that are worse than keeping it. Thank you very much. Would the issues you raised be identical to the issues that were raised previously and ruled on? No. What are your new issues? New issues, once again, is that we have argued, let me say something. The original complaint was written pro se. It was never given the opportunity to be amended by an attorney who knows what they're doing. So based upon the current pleadings, there's implications in there of Eighth Amendment claims. There's actually specific claims in there regarding disability discrimination. Neither were contemplated by the original lawsuit, Your Honor. All right. Thank you. Thank you very, very much for letting me be here today. Thank you, sir. Be well, everybody. Thank you.